IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| APPROVED MORTGAGE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-00633-JMS-TAB |
| | ) |
| TRUIST BANK, f/k/a SUNTRUST BANK, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF IN
SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR
DAMAGES**

Plaintiff, Approved Mortgage Corporation ("Approved Mortgage"), by counsel, submits its response to Defendant's Brief in Support of Motion to Dismiss Plaintiff's Complaint for Damages ("Br."). As explained below, this Court should deny the motion.

**Motion to Dismiss Standards**

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of claims for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In evaluating this 12(b)(6) motion, the Court must construe the complaint in the light most favorable to Approved Mortgage, accepting its factual allegations as true and drawing all reasonable inferences in its favor. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).

A complaint must contain only a "short and plain statement of the claim showing that [Approved Mortgage] is entitled to relief." Fed. R. Civ. P. 8(a)(2). And that statement must have sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Amended Complaint's Allegations

Truist Bank, f/k/a Suntrust Bank's ("Truist") summary of Approved Mortgage's allegations, while accurate, is incomplete. Below, Approved Mortgage provides a more accurate recitation of allegations from its amended complaint ("Compl."). Under the well-established applicable standards, this Court must take the following allegations are true.

On or around July 22, 2021, Truist stopped a wire transfer of $116,306.51 that was intended for account number 1000282311157—an account belonging to AER Operations, LLC ("AER Operations"). (Compl. ¶ 18.) Truist stopped this transfer due to possible fraud or some other irregularity with AER Operation's account. (*Id.*)

Just days later—on July 30 and August 4—Truist received two altered wire transfers with instructions listing the beneficiary's account number as that of AER Operations. (*Id.* ¶ 10; Ex. A, B.) But other information in the instructions did not correspond with AER's account number and contained indicia of fraud. Specifically, the wire transfer instructions listed the following:

- SunTrust[1] itself as the intended beneficiary;

- An address in Ohio that did not exist and that obviously did not match AER Operation's Oregon address; and

- Borrower names and loan numbers that had nothing to do with AER Operations.

(*Id.* ¶¶ 11,13,15.)

Despite having stopped a wire transfer to AER Operations' account just ***eight*** days before, despite the indicia of fraud in the July 30 and August 4 wire transfers, and despite the large amounts

---

[1] At the relevant time, the bank was known as SunTrust.

of the wire transfers ($217,108.33 and $333,536.65), Truist executed the payment orders it received and deposited the funds in AER Operations' account. (*Id.* ¶¶ 16, 18).

Then, shortly after the second wire transfer was executed, the registered agent of AER Operations, Arthur Rubiera, traveled all the way from Oregon to a Memphis, Arkansas, Truist branch. (*Id.* ¶ 19.) Upon Rubiera's request, Truist employees provided him with $546,658.00 in cashier's checks, despite (1) the bank recently flagging the account for fraud; (2) the fact that the AER Operations account was relatively new with no history of such large deposits; and (3) the fact that Rubiera had traveled from Oregon to Memphis to withdraw a significant sum, something he had never done before. (*Id.* ¶¶ 19, 20.)

Approved Mortgage has since replaced the misapplied wire transfer funds to pay off its clients' mortgages. (*Id.* ¶ 24.)

**The Funds Transfer and Article 4A Labels**

The July 30 and August 4 funds transfer involved a number of parties. Approved Mortgage first received two payoff requests for customers who were financing their homes through Approved Mortgage. (*Id.* ¶ 6.) One request was payable to Huntington Mortgage Company for borrower Jagtar Singh's mortgage loan; the other was payable to Huntington Mortgage Company for Rupinder K. Gill Nagra's mortgage loan. (*Id.*)

Unbeknownst to Approved Mortgage, perpetrators illegally gained access to its system and altered the information for both loan payoffs. (*Id.* ¶ 7.) The altered and incorrect wiring instructions were sent from Approved Mortgage's system to MVP National Title Company ("MVP Title"). (*Id.* ¶ 8.) MVP Title then sent payment orders to BankUnited, which executed the orders. (*Id.* ¶ 9.) Truist then received and accepted the wire transfers, depositing the funds into AER Operation's

account. (*Id.* ¶ 16.) MVP Title has since assigned any rights it may have against Truist to Approved Mortgage. (*Id.* ¶ 24.)

Under Indiana Code chapter 26-1-4.1 ("Article 4A"), the following labels apply. MVP Title is both a "sender" and "originator." Indiana Code section 26-1-4.1-103(a)(5) defines a "sender" as "the person giving the instruction to the receiving bank." I.C. § 26-1-4.1-103(a)(5). And Indiana Code section 26-1-4.1-104(c) defines "originator" as the "sender of the first payment order in a funds transfer." *Id.* § 26-1-4.1-104(c). MVP was the sender of the first payment order to one of the receiving banks, BankUnited.

BankUnited is a "sender," "receiving bank," and the "originator's bank." Indiana Code section 26-1-4.1-103(a)(5) defines a "sender" as "the person giving the instruction to the receiving bank." *Id.* § 26-1-4.1-103(a)(5). Indiana Code section 26-1-4.1-103(a)(4) defines "receiving bank" as "the bank to which the sender's instruction is addressed." *Id.* § 26-1-4.1-103(a)(4). And Indiana Code section 26-1-4.1-104(d) defines "originator's bank" as "the receiving bank to which the payment order of the originator is issued if the originator is not a bank." *Id.* § 26-1-4.1-104(d). BankUnited received a payment order from originator and sender MVP Title; and then BankUnited gave instructions to receiving bank Truist.

Truist is a "receiving bank" and the "beneficiary's bank." Indiana Code section 26-1-4.1-103(a)(4) defines "receiving bank" as "the bank to which the sender's instruction is addressed." *Id.* § 26-1-4.1-103(a)(4). And Indiana Code section 26-1-4.1-104(a)(3) defines "beneficiary's bank" as "the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order." *Id.* § 26-1-4.1-104(a)(3). Truist was the bank to which BankUnited's instruction was addressed.

Finally, AER Operations is the "beneficiary." Indiana Code section 36-1-4.1-103(a)(2) defines a "beneficiary" as "the person to be paid by the beneficiary's bank." *Id.* § 36-1-4.1-103(a)(2).

Truist does not appear to dispute the above. (Br. at 4.)

## Argument

In its motion to dismiss, Truist asserts two alternative arguments as to why this Court should dismiss Approved Mortgage's two Article 4A claims and two alternative arguments as to why this Court should dismiss Approved Mortgage's common-law negligence claim.

Specifically, Truist argues as follows:

- For the Article 4A claims, Approved Mortgage—even as assignee of MVP Title's rights— cannot assert a claim against Truist because neither Approved Mortgage nor MVP Title was in privity with Truist. Rather, assignee Approved Mortgage or assignor MVP Title would have to pursue recovery against BankUnited, the originator's bank. (*Id.* at 4-7.)

- Even if Approved Mortgage could assert a UCC claim against Truist, its claim would fail because Truist did not have actual knowledge that the name and account number referred to different persons; and, thus, Truist could rely on the account number in processing the transaction. (*Id.* at 7-8.)

- Approved Mortgage is unable to assert a negligence claim because it is preempted by the UCC. (*Id.* at 8-9.)

- In addition, Approved Mortgage is unable to assert a negligence claim because Truist did not owe Approved Mortgage a duty of care. (*Id.* at 10-11.)

This Court should reject Truist's arguments. Truist fails to consider the plain language of the relevant statutes, and incorporating any privity requirement to Approved Mortgage's

Article 4A claims is unwarranted and would lead to an absurd result. Additionally, Approved Mortgage's common-law negligence claim is not preempted, as it falls outside the ambit of Article 4A; and this is not the appropriate stage for this Court to determine whether, in these circumstances, a duty of care exists under Indiana law. Each of Truist's arguments will be addressed in turn.

## I.  Indiana Code section 26-1-4.1-207(a)

Approved Mortgage first asserts a claim against Truist under Indiana Code section 26-1-4.1-207(a) ("Section 207(a)").  That statute reads as follows:

> Subject to subsection (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, *or* other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.

I.C. § 26-1-4.1-207(a) (emphasis added).

Here, Truist received a payment order and "the name, bank account number, *or other identification* of the beneficiary refer[red] to a nonexistent or unidentifiable person or account." *Id.* (emphasis added).

Importantly, the requirements of Section 207(a) "are stated in the disjunctive"—this means "if the beneficiary's name in payment order and the bank account number provide an identifiable or known person but 'other identification of the beneficiary' refers to a nonexistent or unidentifiable person or account" Section 207(a) is "literally applicable." Frederick H. Miller & Alaina Gimbert, 5 Hawkland UCC Series § 4A-207:1 (June 2022). And once Indiana Code section 26-1-4.1-207(a) is applicable, "no person has rights as a beneficiary of the order and acceptance of the order cannot occur." I.C. § 26-1-4.1-207(a).

Here, the "other identification of the beneficiary," on both wire transfers, referred to "a nonexistent or unidentifiable person or account." This "other identification" on the two wire transfers included the following:

- the beneficiary's address as 555 Cleveland Ave., Columbus, OH 43231, which does not exist;

- borrower names Jagtar Singh (July 30 transfer) and Rupinder Gill Gurinder (August 4 transfer)—both of whom did not have loans with Truist;

- loan numbers for borrowers Jagtar Singh and Rupinder Gill Gurinder, respectively, which did not correspond to loans at Truist.

(Compl. Ex. A, B.)

Given this "other identification" referring to a "nonexistent or unidentifiable person or account," Section 207(a) prohibited Truist from accepting the payment order. And the official comment to Section 207(a) is clear: "if the beneficiary of a funds transfer is nonexistent or unidentifiable, each sender in the funds transfer that has paid its payment order is entitled to get its money back." I.C. § 26-1-4.1-207 cmt. 1.

The plain language of Section 207(a), as well as the official comment's explanation, reveal that Approved Mortgage, standing in the shoes of "sender" MVP Title, is "entitled to get its money back." *Id.*

Importantly, in its dismissal brief, Truist does not address the plain language of Section 207(a)—particularly, the use of the disjunctive "or" preceding "other identification." In fact, Truist does not actually cite Section 207**(a)** in its brief at all. Truist's position simply is that Approved Mortgage cannot successfully assert any Article 4A claim against Truist because neither Approved Mortgage nor MVP Title was in privity with Truist. (Br. at 4-7.) In so arguing, Truist claims that

"section 207 does not specify what remedies are available if a beneficiary's bank erroneously accepts a payment order" and that the "remedies are, instead, set out in section 402," (*id.* at 5), specifically subsection (d) ("Section 402(d)"):

> If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay. Except as provided in IC 26-1-4.1-204 and IC 26-1-4.1-304, interest is payable on the refundable amount from the date of payment.

I.C. § 26-1-4.1-402(d). And, citing Second Circuit case law, Truist argues that Section 402(d)—known as "the money back guarantee"—incorporates a privity requirement. (Br. at 5-6).

Approved Mortgage will address the Second Circuit case law and its incorporated privity requirement shortly; however, as a threshold matter, Truist does not explain why resort to Section 402(d) is necessary in the first instance.

### a. Inapplicability of Section 402 to a Section 207(a) claim.

Nothing in the plain language of Section 207(a), or the comments applicable to Section 207(a), require one to look to Section 402(d) for a remedy. *See* I.C. § 26-1-4.1-207(a), cmt. 1. Additionally, nothing in Section 402(d), or the comments applicable to Section 402(d), mention that the "money back guarantee" is the remedy applicable to Section 207(a). *Id.* § 26-1-4.1-402(d), cmt. 2.[2]

---

[2] Rather, Indiana Code section 26-1-4.1-402(a) states that Section 402 generally—which is titled "Obligation of sender to pay receiving bank"—"is subject to . . . IC 26-1-4.1-207." *Id.* § 26-1-4.1-402(a). But this simply means that, in applying Section 402, one may need to refer to Section 207 to determine when a sender did or did not have an "obligation" to pay. Indeed, portions of Section 402, including its subsection (d), contain variants of the word "oblige"; portions of Section 207 do, as well. But nothing in Section 207(a), specifically, refers to a sender being "obliged" to pay—rather, it refers to a situation when acceptance of a payment order cannot occur because "other identification" in the wiring instructions refer to an account that is "nonexistent or unidentifiable." *Id.* § 26-1-4.1-207(a). Importantly, Section 207 contains no language stating that it is "subject to" remedies provided in Section 402.

It is also clear from the plain language of Section 207(a) and its official comment what remedy Approved Mortgage, as assignee of a sender's rights, is due and from whom. Section 207(a) states that

- "if, in a payment order received by ***the beneficiary's bank***";

- "other identification of the beneficiary refers to a nonexistent or unidentifiable person or account";

- "acceptance of the order cannot occur"; and

- "each sender in the funds transfer that has paid its payment order is entitled to get its money back."

*Id.* § 26-1-4.1-207(a), cmt. 1 (emphasis added).

Thus, Section 207(a) expressly places liability on the "beneficiary's bank" if it accepts a payment order that should not have been accepted, allowing a sender to get its money back from the beneficiary's bank. Importantly, Section 207(a)'s plain language incorporates no privity requirement—meaning that Approved Mortgage, standing in MVP Title's shoes, does not have to sue BankUnited instead of Truist. And this makes sense. The plain language of 207(a) refers ***only*** to the "beneficiary's bank" as the wrongdoer, and there would be no grounds for Approved Mortgage or MVP Title to sue BankUnited, as BankUnited could not know, for privacy reasons, that the "other identification" did not refer to an existing or identifiable account at ***another*** bank. That is, BankUnited could not have engaged in wrongdoing; rather, only the beneficiary's bank— Truist—could know that the "other identification" referred to none of its own account holders, including AER Operations. That is why the "beneficiary's bank"—and no other party to the transfer—is called out specifically in Section 207(a).

To reiterate, under Section 207(a), when an "other identifier on the order refers to a non-existent or unidentifiable person . . . it will be up to the beneficiary's bank [Truist] which made the credit available to seek to recover from [AER Operations]" and "any senders which have previously paid their payment orders will be entitled to restitution." Patricia B. Fry, *A Primer on the Rules Governing Electronic Financial Svcs.*, C601 ALI-ABA 135, 162 (May 1991).

Thus, under the plain language of Section 207(a), Approved Mortgage has stated "a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. This Court should accordingly deny Truist's motion to dismiss Approved Mortgage's claim under Indiana Code section 26-1-4.1-207(a).

However, if this Court deems that resort to Section 402(d), the "money back guarantee," is necessary once a claim under Section 207(a) is asserted, dismissal of the Section 207(a) claim is still inappropriate.

### b. There is no privity requirement to assert a Section 207(a) claim.

As briefly mentioned above, Truist argues that Section 402(d)—the "money back guarantee"—sets forth the remedy for a Section 207(a) claim. (Br. at 5.) Truist continues that, because Section 402(d) incorporates a privity requirement, Approved Mortgage, as assignee of sender MVP Title's rights, cannot assert a claim against Truist. (*Id.* at 6-7.) Rather, Approved Mortgage would have to pursue any Section 207(a) claim against BankUnited instead. (*Id.* at 7.)

In asserting such arguments, Truist primarily cites two Second Circuit cases. *See Exp.-Imp. Bank of U.S. v. Asia Pump & Paper Co.*, 609 F.3d 111, 120 (2d. Cir 2010); *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998). Approved Mortgage acknowledges that, in these cases, the Second Circuit has incorporated a privity requirement into Section 402(d). However, these Second Circuit cases involved incomplete funds transfers (which is not the case here); and

no general privity requirement has been embraced by the Seventh Circuit. Additionally, a privity requirement does not appear within Section 402(d)'s plain language, does not make sense, and leads to impunity for any beneficiary's bank that looks the other way when faced with fraudulent wire transfers. This Court should thus adhere to Indiana's strong preference for reading its statutes as written and decline an invitation to look beyond the statute's words, especially when that invitation would lead to an absurd result. *Lake Imaging, LLC v. Franciscan Alliance, Inc.*, 182 N.E.3d 203, 207 (Ind. 2022) (noting that the statutory language should be given "its plain and ordinary meaning"); *see also Consumer Attorney Svcs., P.A. v. State*, 71 N.E.3d 362, 365 (Ind. 2017) (stating general principles that a court should "avoid construing a statute so as to create an absurd result").

Truist's privity argument fails for several reasons. First, a privity requirement does not appear in the plain language of Section 402(d):

> If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay. Except as provided in IC 26-1-4.1-204 and IC 26-1-4.1-304, interest is payable on the refundable amount from the date of payment.

I.C. § 26-1-4.1-402(d). Rather, under the plain language, "the bank receiving payment"—here Truist—"is obligated to refund payment to the extent the sender [MVP Title] was not obligated to pay." *Id.* There is simply no requirement that the "sender" be in privity with "the bank receiving payment." If that was the intent of the statutes, different language would have been used, such as "If the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment ***directly from the sender*** is obligated to refund payment to the extent the sender was not obligated to pay" or "If the sender of a payment order pays the

order and was not obligated to pay all or part of the amount paid, the ***sender's receiving bank*** is obligated to refund payment to the extent the sender was not obligated to pay."

Second, if Section 402(d) is triggered by the application of Section 207(a)—as Truist argues—incorporating a privity requirement does not make sense. Section 207(a) applies only when the ***beneficiary's bank*** commits wrongdoing by improperly accepting a payment order when "other identification of the beneficiary refers to a nonexistent or unidentifiable person or account." I.C. § 26-1-4.1-207(a). But, according to Truist, even though the beneficiary's bank's wrongdoing under Section 207(a) triggered the remedies provided in Section 402(d), a sender would have to sue ***another*** bank that ***did not commit wrongdoing***. The end result, for all practical purposes, means that the actual wrongdoer is absolved of liability. The facts of this case show how.

Approved Mortgage has alleged that it has a claim under Section 207(a) because Truist wrongfully accepted a payment order despite several pieces of information obviously pointing to a nonexistent or unidentifiable account holder. And Truist would be the only bank to know that this other information did not correspond to any of its own account holders. Yet, Truist argues that Approved Mortgage cannot pursue a claim against Truist due to a lack of privity, and instead Approved Mortgage (standing in the shoes of MVP Title) would have to sue BankUnited, which, in turn, could seek recovery from Truist. But this begs a lots of questions:

- Under what Article 4A section would Approved Mortgage/MVP Title sue BankUnited? Section 207(a), for example, specifically refers only to the "beneficiary's bank" (which BankUnited is not) and a beneficiary bank's improper acceptance of a payment order.

- Similarly, what is BankUnited's culpable conduct? It is illogical to conclude the drafters recognized potential wrongdoing on a beneficiary bank's part in Section 207(a) but then

required suit, under Section 402(d), against ***another*** bank that has committed no wrongdoing.

- And, perhaps most importantly, how would a beneficiary bank that violated Section 207(a) ever be held liable? There is no incentive for BankUnited, which is in privity with Truist, to sue Truist. BankUnited has suffered no loss, and arguably a court would dismiss any claim BankUnited would bring on that basis.

These questions illustrate the significant, real-world problems associated with imposing a privity requirement on a sender seeking recovery when that sender asserts a Section 207(a) claim. The drafters of Article 4A "carefully considered the competing interests involved in the allocation of risks of loss in funds transfer systems," Miller, *supra*, at 5 Hawland UCC Series § 4A-101:1. Surely, in its careful consideration, the drafters did not elevate—above all other interests involved a funds transfer—the interests of a beneficiary's bank that committed wrongdoing under Section 207(a). But incorporating a privity requirement for a Section 207(a) claim does just that by granting a beneficiary's bank impunity for its improper actions.

Finally, the Second Circuit cases on which Truist relies involved wholly different types of funds transfers, meaning the rationale for a privity requirement does not make sense in this case. As Truist notes, the Second Circuit has stated the following rationale for incorporating a privity requirement:

> To allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require ***intermediary banks*** to investigate the financial circumstances and various legal relations of the other parties to the transfer. These are matters as to which an ***intermediary bank*** ordinarily should not have to be concerned and, if it were otherwise, would impede the use of rapid electronic funds transfers in commerce by causing delays and driving up costs.

*Grain Traders*, 160 F.3d at 102 (2nd Cir. 1998) (emphases added).

Critically, in spelling out this policy, the Second Circuit was specifically concerned with negative impacts on "intermediary banks." By definition, an "intermediary bank" is "a receiving bank other than the originator's bank or the beneficiary's bank." I.C. § 26-1-4.1-104(b). The *Grain Traders* policy reasons for a privity requirement do not even apply here, as there was no intermediary bank involved—just an originator's bank (BankUnited) and the beneficiary's bank (Truist). *Grain Traders*, on the other hand, involved multiple intermediary banks.[3]

Additionally, both Second Circuit cases upon which Truist depends—*Grain Traders* and *Exp.-Imp. Bank of U.S.*—deal with funds transfers that were never completed, which again is not the situation here. *See Grain Traders*, 160 F.3d at 101 (referring to the "intent of the Article 4-A drafters to effect an orderly unraveling of a funds transfer **in the event that the transfer was not completed**" by "incorporating a 'privity' requirement into the 'money back guarantee' provision (emphasis added)); *Exp.-Imp. Bank of U.S.*, 609 F.3d at 121 ("[A]n originator and intended beneficiary have no legal claim or contractual rights against an intermediary bank **in the event that a funds transfer is not completed**." (emphasis added)).

In fact, in *Exp.-Imp. Bank of U.S.*, the Second Circuit was specifically focused on claims implicating UCC sections 4A-502(d) and 503—sections not implicated in the present case. And,

---

[3] The transaction in *Grain Traders* was much more complex than the transaction here:

> [T]he transfer, as instructed by Grain Traders, required BCN to debit Grain Traders's account at BCN in the amount of $310,000, and then to issue a payment order to Citibank. That payment order, in turn, was to require Citibank to debit $310,000 from BCN's account at Citibank and to credit that amount to the account that Banque du Credit et Investissement Ltd. ("BCIL") maintained at Citibank. Citibank, in turn, was to issue a payment order to BCIL instructing it to transfer, by unspecified means, $310,000 to Banco Extrader, S.A. ("Extrader"). Extrader was then to credit the $310,000 to the account maintained at Extrader by Kraemer.

*Grain Traders*, 160 F.3d at 98.

thus, the Second Circuit quoted comments *specific to those sections of the UCC* when stating that "under the Article 4A structure, the issuance and acceptance of payment orders creates rights and obligations only as between the sender of the payment order and its receiving bank." *Exp-Imp. Bank of U.S.*, 609 F.3d at 120 (quoting PEB Commentary No. 16, §§ 4A–502(d) and 4A–503, at 3 (2009)); *see* Permanent Editorial Board for the Uniform Commercial Code, PEB Commentary No. 16 Sections 4A-502(d) and 4A-503 (July 1, 2009), *available at* https://www.ali.org/media/filer_public/9c/8f/9c8f3cc2-c8d0-4dea-b4bc-f74ca2a1b2e4/commentary-4a-502d_and_4a-503-final.pdf. In other words, the privity language that Truist claims applies here, (*see* Br. at 5), originated in cases involving very different and unusual transactions—not the simple, garden-variety wire transfers like those in the present case. Truist should not be able to use that privity policy language to seek dismissal without first explaining why the language should be stretched to apply to Approved Mortgage's fact scenario.[4]

---

[4] Truist also relies on an unreported case, *Frankel-Ross v. Congregation OHR Hatalmud*, No. 15 CIV. 6566 (NRB), 2016 WL 4939074, at *3 (S.D.N.Y. Sept. 12, 2016), to argue that a privity requirement applies to Approved Mortgage's Section 207(a) claim. (Br. at 6.) First, *Frankel-Ross* did not involve Section 207(a)—but rather the equivalent of Indiana's Section 207(b)(2). *Id.* Regardless, *Frankel-Ross* offered no explanation as to why a privity requirement would be appropriate—rather *Frankel-Ross* simply stated that, in *Grain Traders*, "the Second Circuit held that Section 4-A-402 'incorporates a 'privity requirement into the 'money back guarantee' provision so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole.'" *Id.* at *3 (quoting *Grain Traders*, 160 F.3d at 101). But, in quoting *Grain Traders*, *Frankel-Ross* left out critical contextual language. *Grain Traders* specifically had noted that the privity requirement was tied to *incomplete* funds transfers; the Second Circuit explained,

> [The Official Comment to § 4–A–402] states, in relevant part:
>
>> the money-back guarantee of § 4–A–402(4) is particularly important to Originator if noncompletion of the funds transfer is due to the fault of an intermediary bank rather than Bank A [the Originator's bank]. In that case Bank A must refund payment to Originator, and Bank A has the burden of obtaining refund from the intermediary bank that it paid.
>
> § 4–A–402, cmt. 2. We think this comment makes plain the intent of the Article 4–A drafters to effect an orderly unraveling of a funds transfer *in the event that the transfer was not completed*, and accomplished this by incorporating a "privity" requirement into the "money back guarantee" provision. so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole.

And extending that language to this commonplace scenario—where an entity requests its bank to wire funds to another bank's account holder—would insulate beneficiary banks from liability, even when acting in contravention of Article 4A's mandates. While the Second Circuit has imposed a privity requirement in other factual scenarios to enhance predictability of liability, imposing a privity requirement here would (1) act as a shield to Truist's liability, even though it committed wrongdoing; and (2) render Section 207(a) useless—which, as a matter of statutory construction—is a result this Court must avoid. *See Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 948 (Ind. 2001).

Here's how: under Section 207(a), the beneficiary's bank cannot accept a payment order if "other identification" refers to a "nonexistent or unidentifiable person or account." I.C. § 26-1-4.1-207(a). So, if a beneficiary's bank accepts the order nonetheless, it has committed wrongdoing. *See id.* But according to Truist, the only party who may recover from the beneficiary's bank is most likely a party that has not incurred any loss—the originator's bank—and has no incentive to sue. (Br. at 7.) The beneficiary's bank enjoys complete immunity—despite the clear language of Section 207(a)'s comment 1 that "each sender in the funds transfer that has paid its payment order is entitled to get its money back." I.C. § 26-1-4.1-207(a) cmt. 1. This Court should thus reject Truist's privity approach.

---

*Grain Traders*, 160 F.3d at 101 (cleaned up with second alteration in original and emphasis added).

Thus, *Frankel-Ross*'s broad imposition of a privity requirement based on *Grain Traders* is questionable; and *Frankel-Ross*'s utility as persuasive authority is minimal, at best.

The same can be said for *Simple Helix, LLC v. Relus Techs., LLC*, which, like *Frankel-Ross*, included no analysis of why the Second Circuit's limited privity requirement should be extended to situations not involving intermediary banks and/or incomplete funds transfers. 493 F. Supp. 3d 1087, 1102 (N.D. Ala. 2020). (*See* Br. at 6.)

In summary, Approved Mortgage has offered a number of reasons why dismissal of its 207(a) claim is not appropriate:

- Approved Mortgage has sufficiently alleged facts to support a claim against Truist under Section 207(a), given that section's plain language, which contains no privity requirement.

- Section 402's "money back guarantee" is not applicable to Approved Mortgage's Section 207(a) claim; thus, any Section 402 privity requirement is inapplicable as well.

- Even if Section 402 applies, its plain language does not dictate any privity requirement.

- Neither Indiana nor the Seventh Circuit has ever embraced a privity requirement for claims arising under Section 207(a).

- The Second Circuit has imposed a privity requirement in very specific Section 402 circumstances—those involving incomplete funds transfers (not the case here). Additionally, the Second Circuit's privity requirement cases were concerned with "intermediary banks" (none are involved here) and different Article 4A sections, not Section 207(a).

- Imposing a privity requirement would insulate a beneficiary bank from liability despite its wrongdoing, and require banks who have incurred no losses to pursue lawsuits they most certainly would not file. Such an absurd result could not have been the intent of the Article 4A drafters.

Truist's 12(b)(6) motion fails to address any of these arguments and should be denied.

## II. Indiana Code section 26-1-4.1-207(b)(2)

Approved Mortgage next asserts a claim against Truist under Indiana Code section 26-1-4.1-207(b)(2) ("Section 207(b)(2)"). That statute reads as follows:

> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account

number and the name and number identify different persons, the following rules apply:

> (1) Except as otherwise provided in subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.

> (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

I.C. § 26-1-4.1-207(b).

Here, Truist received two payment orders with "SunTrust" (now known as Truist) listed as the beneficiary and the account number listed as the AER Operations bank account number. (Compl. Ex. A, B.) Approved Mortgage alleged that Section 207(b)(2) applies because Truist had "actual knowledge" that the listed beneficiary—itself—did not own the account that was listed by number. (*Id.* ¶¶ 33, 34.) And, thus, under the plain language of Section 207(b)(2), acceptance of the order could not occur, and the "Beneficiary's Bank takes the loss," I.C. § 26-1-4.1-207 cmt. 2.

Approved Mortgage acknowledges that although "it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, . . . if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost." *Id.* And so Section 207(b) "allows banks to utilize automated processing by allowing banks to act on the basis of the number without regard to the name ***if the bank does not know*** that the name and number refer to different persons." *Id.* (emphasis added).

Here, Approved Mortgage has alleged that Truist **did** know that it itself was not the holder of the beneficiary bank account listed in the wire transfers—that is, Truist had actual knowledge that it itself was not AER Operations. (Compl. ¶¶ 33, 34.) Truist argues that this allegation is not enough because "Approved Mortgage does not adequately plead the basis for its conclusion that Truist had actual knowledge of the discrepancy" since "Approved Mortgage does not allege that Truist processed the transaction manually, nor is it plausible to assume Truist manually reviewed the payment order." (Br. at 8.)

But Federal Rule of Civil Procedure 9(b) provides that "knowledge," as with other states of mind, "may be alleged generally." Fed. R. Civ. P. 9(b). This means that Approved Mortgage's complaint did not need to cite to evidence or factual circumstances supporting its claim of Truist's knowledge. *Cf. Church v. Dana Kepner Co., Inc.*, No. 11-cv-02632-CMA-MEH, 2012 WL 4086517, at *3 (D. Colo. Sept. 16, 2012) (applying the *Twombly* standard and concluding that "[a]t the motion to dismiss stage, Plaintiff is not required to demonstrate, nor would it be feasible for her to do so on the absence of any discovery, that Defendant **actually knew** of defects in the product it sold" (emphasis added)). Truist cannot, at this stage, foreclose Approved Mortgage's Section 207(b) claim by essentially stating that, given its automated procedures, it must have lacked knowledge of the discrepancy between the beneficiary name and beneficiary account number. The Court does not yet have information before it on Truist's procedures and whether those procedures addressed, in any way, conflicts between a beneficiary name and beneficiary account number on wiring instructions—including in the unusual circumstance of when the listed beneficiary is the bank itself **and** when the bank had, just a few days before, stopped another wire transfer to the listed beneficiary account number due to likely fraud. These are questions of fact that cannot be

resolved at the motion to dismiss stage, and certainly cannot be resolved ***against*** Approved Mortgage.

Given that Approved Mortgage has adequately pled "actual knowledge," its Section 207(b)(2) claim must survive. "Although a bank has no duty to affirmatively search for conflicts between beneficiary names and account numbers on incoming wires, it may not escape liability if, before it pays the wire, it gains knowledge of the conflict ***by any means***, but nonetheless pays an individual who is not entitled to receive the funds." *First Sec. Bank of N.M. v. Pan Am. Bank*, 215 F.3d 1147, 1153 (10th Cir. 2000) (emphasis added). Approved Mortgage's factual allegations thus state a plausible claim for relief under Section 207(b)(2).

As with its Section 207(a) arguments, Truist's position is that Approved Mortgage still cannot successfully assert its Section 207(b)(2) claim because neither Approved Mortgage nor MVP Title was in privity with Truist. (Br. at 4-7). Approved Mortgage incorporates its arguments above regarding the inapplicability of Section 402(d) and a privity requirement, emphasizing the following points:

- Similar to Section 207(a), nothing in the plain language of Section 207(b)(2), or the comments applicable to it, require one to look to Section 402(d) for a remedy. Section 207(b)(2) clearly places liability on the "beneficiary's bank" if it had actual knowledge that the beneficiary name and beneficiary account number "identify different persons." I.C. § 26-1-4.1-207(b)(2).

- The plain language of Section 207(b)(2) refers only to the "beneficiary's bank" as the wrongdoer, and there would be no grounds for Approved Mortgage or MVP Title to sue BankUnited under that section. BankUnited could not possess actual knowledge, for privacy and logistical reasons, that the beneficiary name on the wire transfer sheets

did not correspond to the beneficiary account number, which was of a bank account held at Truist, the beneficiary's bank.

- Even if Section 402(d)'s "money back guarantee" applies, this Court should find no privity requirement to assert a claim against Truist. Section 402(d)'s plain language does not include a privity requirement.

- While the Second Circuit—but not the Seventh—has incorporated a privity requirement into the "money back guarantee," it has done so in completely different circumstances. Those circumstances involved intermediary banks (there are none here) and incomplete funds transfers (again, none here). In its brief, Truist does not elaborate on the circumstances present in the Second Circuit cases, instead quoting language without appropriate context in an attempt to expand the Second Circuit's imposed privity requirement to other applications.

- To apply a privity requirement for the garden-variety wire transfers present here would lead to an absurd result and have far-reaching consequences. Although Article 4A would deem Truist, as the beneficiary's bank, the wrongdoer under Section 207(b)(2), a privity requirement would require Approved Mortgage/MVP Title to sue BankUnited, a bank that committed no wrongdoing, and require BankUnited, which incurred no loss, to sue Truist. But BankUnited has no incentive or grounds to sue Truist, meaning that Truist—despite its wrongdoing under Section 207(b)(2) by improperly accepting wire transfers—enjoys complete immunity.

Truist does not adequately address the above issues in its motion to dismiss, underscoring why dismissal is inappropriate in this case. As with the Section 207(a) claim, this Court should find that Approved Mortgage's Section 207(b)(2) survives Truist's motion to dismiss.

### III. Common-Law Negligence

Approved Mortgage also asserts a common-law negligence claim against Truist. For this claim, Approved Mortgage alleges that Truist breached its duty to use ordinary care, sound business practices, and act in a commercial reasonably manner in three separate ways. (Compl. ¶ 38.)

First, Truist failed to detect and flag the AER Operations account or subject it to further scrutiny—despite the bank's obvious concerns with the account that triggered the bank to stop an earlier $116,306.51 account transfer intended for the AER Operations account. (*Id.* ¶ 40.) That is, prior to the execution of the wire transfers at issue here, Truist was negligent for failing to flag the AER Operations account as fraudulent and stop further fraudulent funds transfers.

Second, Truist handed Arthur Rubiera, the registered agent of AER Operations, over a half million dollars in two cashier's checks at a branch in Arkansas thousands of miles from his address in Oregon from an account that just days earlier had a payment stopped for suspected fraud. (*Id.* ¶ 42.) The AER Operations account had been open for less than a year, had recently had at least one past wire transfer stopped due to fraud or another irregularity, had never had significant credits until the two wire transfers that are the subject of this suit, and had an Oregon address. Additionally, the large withdrawals on Rubiera's request occurred within days of the wire transfers. (*Id.*) That is, Truist was also negligent after the execution of the wire transfers at issue here.

Third, Truist failed to implement and use adequate security procedures to properly detect and flag suspicious accounts or activity. (*Id.* ¶ 44.)

Truist asserts that Approved Mortgage's negligence claim should be dismissed for two reasons: (1) because it is preempted by the UCC; and (2) even if it was not preempted, Truist did not owe Approved Mortgage a duty of care. (Br. at 8-11.) Neither of these arguments have merit.

### a. Article 4A Preemption

Truist argues that Approved Mortgage's negligence claim is preempted because "Article 4A provides the exclusive source of rights and remedies for all participants in the funds transfer system." (*Id.* at 9.) But that overstates preemption under Article 4A. Rather,

> [t]he rules that emerged during the drafting of the U.C.C. "are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties *in any situation covered by particular provisions of the Article.*" U.C.C. § 4A–102 cmt. (emphasis added). However, Article 4A is not the exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer. The Article itself is replete with references to common law remedies. The Drafting Committee intended that Article 4A would be supplemented, enhanced, and in some places, superceded by other bodies of law . . . the Article is intended to synergize with other legal doctrines. The legislative intent reflected here is that carefully drafted provisions . . . are not to be side-stepped when convenient by reference to other sources of law. But where the provisions do not venture, the claimant need not turn back; he or she may seek other guides, statutory or judicial.

*Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003) (cleaned up and internal citations omitted).

The Southern District of Indiana has explained that the legislative intent behind Article 4A places "restraints" on plaintiffs like Approved Mortgage "but *only* when they resort to principles of law or equity outside of Article 4A to establish rights, duties or liabilities that are plainly contemplated by, and thus inconsistent with, the provisions therein." *BMO Harris N.A. v. Salin Bank & Trust Co.*, 442 F.Supp.3d 1075, 1081 (S.D. Ind. 2020) (emphasis added). To decide whether Approved Mortgage's common-law negligence claim is preempted by the UCC, this

Court "must determine whether the allegations in the Complaint are 'squarely' contemplated by Article 4A." *Id.* (quoting *Consorcio Indus. De Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, NA*, No. 3:10-cv-21111, 2012 WL 13019678, at *3 (N.D. Tex. July 12, 2012)). To be sure, Article 4A has not "'completely eclipsed' the applicability of common law in the area of fund transfers." *Id.* (quoting *Sheerbonnet, Ltd. v. Am. Exp. Bank, Ltd.*, 951 F.Supp.403, 407 (S.D.N.Y. 1995)).

Courts facing a preemption question must consider "whether additional facts or conduct potentially lying outside the scope of Art. 4A are at issue." *Consorcio*, 2012 WL 13019678, at *3; *see also Zengen, Inc. v. Comerica Bank,* 158 P.3d 800, 808 (Cal. 2007) (pointing out that the UCC does not necessarily displace common law actions based on activities surrounding funds transfers). Where certain conduct or a fact scenario is not "addressed squarely" by Article 4A, *Consorcio*, 2012 WL 13019678, at *3, then preemption should not apply. As explained above, Approved Mortgage has alleged that Truist was negligent in its conduct that occurred both before and after the wire transfers at issue. Truist failed to flag the AER Operations account for fraud and heightened scrutiny ***before*** the two relevant wire transfers, and was negligent for handing over a significant sum to the registered agent of AER Operations under suspicious circumstances ***after*** the two relevant wire transfers. These allegations fall outside the scope of Article 4A and are not preempted.

The lack of preemption is bolstered by Approved Mortgage's allegations that Truist had suspicions about the AER Operations account before accepting the relevant wire transfers. *See Consorcio,* 2012 WL 13019678, at *3; *see also Regions Bank*, 345 F.3d at 1275-76 (determining that a state law claim requiring a party to disgorge funds when it knew or should have known that funds were fraudulently obtained was not inconsistent with Article 4A); *Schlegel v. Bank of Am.,*

*N.A.*, 271 Va. 542, 544 (Va. 2006) (determining that Article 4A of UCC did not address freezing of wired funds subsequent to their receipt and so common law action not preempted). To be sure, to "[i]nterpret Article 4A in a manner that would allow a beneficiary bank to accept funds when it knows or should know that they were fraudulently obtained, would allow banks to use Article 4A as a shield for fraudulent activity. It could hardly have been the intent of the drafters to enable a party to succeed in engaging in fraudulent activity, so long as it complied with the provisions of Article 4A." *Regions Bank*, 345 F.3d at 1276. This Court should reject Truist's attempt to use Article 4A as a "shield" to any liability by asserting that Approved Mortgage's negligence claim is preempted.

Ultimately, Approved Mortgage's negligence claim "does not attempt to confer upon [it] a right which Article 4A precludes or otherwise prescribes," and the negligence claim does not "impose upon [Truist] a liability which Article 4A defines or against which Article 4A shields." *Simple Helix, LLC v. Relus Techs., LLC*, 493 F.Supp.3d 1087 (N.D. Ala. 2020) (finding no preemption by Article 4A of state law conversion claim).

Truist's conclusory argument—without analysis of Approved Mortgage's allegations— that the negligence claim is automatically preempted by Article 4A should be rejected. *See Squeeze Me Once, LLC v. SunTrust Bank*, 2020 WL 12968001, at *10 (August 3, 2020) (finding certain negligence claims "not preempted by Article 4A" because they "[did] not squarely fall within the UCC's ambit and [were] not inconsistent with the UCC"). Approved Mortgage's allegations reveal that Truist's negligent conduct was not "squarely contemplated" by Article 4A and, thus, not preempted. *BMO Harris N.A.*, 442 F.Supp.3d at 1081. This Court should not dismiss Approved Mortgage's negligence claim on the basis of preemption.

### b. Purported Lack of Duty

Truist next argues that dismissal of the negligence claim is appropriate because it did not owe Approved Mortgage any duty of care. Truist concedes that "Indiana courts have not held that a bank may never owe a duty to a non-customer," but points to cases from other jurisdictions "holding that banks do not owe non-customers a duty of care." (Br. at 10).

As a threshold matter, the motion to dismiss stage is not one where this Court should determine the weighty question of whether a duty exists under Indiana law. In *Purcell v. Old Nat'l Bank*, the Indiana Supreme Court explicitly declined to adopt a rule that a bank owes no duty to a non-customer in all circumstances. 972 N.E.2d 835 (Ind. 2012). Specifically, the Indiana Supreme Court acknowledged the bank's argument that it owed no duty because the plaintiff was "not a customer and had no banking relationship" with the bank. *Id.* at 843. The Court, however, found "no occasion to validate such a blanket rule" in that case. *Id.* In other words, whether a bank owes a duty to a non-customer in Indiana remains an open question.

Because the duty a bank owes to a non-customer has not already been "declared or otherwise articulated" under Indiana law, a judicial determination of duty would be necessary. *Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016) (quoting *N. Ind. Pub. Serv. Corp. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003)). However, such a judicial determination—undeniably involving a complex legal question—would involve a *Webb* analysis to balance the relationship between the parties, foreseeability, and public policy. *Webb v. Jarvis*, 575 N.E.2d 992, 995–98 (Ind. 1991).[5] Performing a *Webb* analysis at the motion-to-dismiss stage would be premature.

---

[5] Contrary to the red-flag designation on Westlaw, *Webb v. Jarvis* was not overruled by *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384 (Ind. 2016). Indiana courts continue to employ the *Webb* analysis post-*Goodwin*. *See, e.g.*, *Schmidt v. Allstate Prop. & Cas. Ins. Co.*, 141 N.E.3d 1251 (Ind. Ct. App. 2020), *trans. denied*.

A compelling case can be made that Indiana would adopt a duty on Truist's part to Approved Mortgage, given the circumstances present here. The reasonable inferences drawn from Approved Mortgage's allegations—which include Truist's knowledge that the AER Operations account was suspicious—is that it was foreseeable that a non-customer would experience a significant loss if Truist did not take appropriate measures in regards to the AER Operations account that just days earlier had been involved in suspected fraudulent activity. And foreseeability has been a key concept in determining duty in Indiana. *See generally Rogers*, 63 N.E.3d at 320–25 (underscoring the importance of foreseeability when determining what duty a landowner may owe to a particular invitee); *Webb*, 575 N.E.2d at 995 (recognizing that while "[d]uring the nineteenth century, the common law required privity in order to impose a duty of reasonable care" that the "requirement has vanished evolutionarily during the twentieth century"). But, again, this is not the stage to decide this important legal question. This Court should not dismiss Approved Mortgage's common-law negligence claim based on a lack of duty.

## Conclusion

For the above reasons, Truist's motion to dismiss should be denied.

June 22, 2022                                Respectfully submitted,

*/s/ Paul D. Vink*
Paul D. Vink (Atty. No. 23785-32)
Seema R. Shah (Atty. No. 26583-49)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
(317) 684-5000; (317) 684-5422 DDN
(317) 684-5173 fax
pvink@boselaw.com
sshah@boselaw.com

*Attorneys for Plaintiff, Approved Mortgage Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2022, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Darren A. Craig
Cameron S. Trachtman
dcraig@fbtlaw.com
ctrachtman@fbtlaw.com

*/s/ Paul D. Vink*

Paul D. Vink

4367809_2