**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| APPROVED MORTGAGE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> TRUIST BANK, f/k/a SUNTRUST BANK, <br><br> Defendant. | Case No. 1:22-cv-00633-JMS-TAB |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**
<u>**PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES**</u>

**INTRODUCTION**

Plaintiff Approved Mortgage Corporation ("**Approved Mortgage**") asks this Court to interpret Article 4A of the Uniform Commercial Code in a way that diverges from the text of the statute and that differs from how every other court has interpreted that text. Under well-established law, a party who sends a funds transfer that does not comply with the requirements of Article 4A may recover the funds it sent only from the party with whom it dealt directly. This privity requirement is clear from the language and structure of Article 4A, has been accepted by all courts to consider the issue, and is necessary to protect all parties in the funds transfer process from the possibility of multiple and inconsistent liabilities. Approved Mortgage, however, asks the Court to disregard those considerations and allow it to recover from Defendant Truist Bank f/k/a SunTrust Bank ("**Truist**") money that its customers inadvertently sent to Truist's customer, AER Operations, LLC ("**AER**"), because an unknown person hacked Approved Mortgage's computer system and altered payment orders. The Court should decline that invitation because doing so will create inconsistency in the law and unpredictability in the funds transfer system.

The Court should also reject Approved Mortgage's attempt to use the common law of negligence to alter the remedies available in the funds transfer system. Approved Mortgage seeks to impose liability on Truist using a theory of negligence under exactly the circumstances where Article 4A does not permit relief. Accordingly, its negligence claim is preempted. Moreover, the Court should determine—as a matter of law—that Truist Bank does not have a duty to Approved Mortgage, with which it never had any dealings.

## ARGUMENT

**I.     The text and structure of Article 4A section 207 limits the right to recover money in funds transfers to those with whom a party is in privity.**

Approved Mortgage contends that it has a remedy directly under subsections (a) and (b) UCC section 4A-207, enacted in Indiana as Indiana Code section 26-1-4.1-207. (Plaintiff's Response to Defendant's Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint for Damages, Document 26 ("**Response**") at 6–21.) But Approved Mortgage cannot recover under both subsections because subsection (a) states that its provisions are "[s]ubject to subsection (b)," and comment 2 to that section expressly states that "[s]ubsection (b) . . . takes precedence over subjection (a)." Ind. Code § 26-1-4.1-207(a), Official Comment 2. Because Approved Mortgage seeks recover under subjection (b), it cannot also recover under subsection (a). *Id.* But, in fact, neither section provides Approved Mortgage with a remedy.

Approved Mortgage relies on the statements in subsection (a) and (b) that under certain circumstances, which Approved Mortgage alleges are present here, "acceptance of the [payment] order cannot occur." *Id.* § 26-1-4.1-207(a), (b)(2). But neither subsection states what remedies are available when acceptance of a payment order cannot occur. Approved Mortgage contends that comment 1 to section 207 provides the applicable remedy by stating that "each sender in the

2

funds transfer that has paid its payment order is entitled to get its money back." (Response at 7, quoting Ind. Code § 26-1-4.1-207, Official Comment 1.)

Based on that comment, Approved Mortgage argues that it can recover its money directly from Truist. (Response at 9.) But the comment's reference to "each sender" shows why Approved Mortgage is wrong and why the courts that have imposed a privity requirement to recover funds transfers are right. Approved Mortgage acknowledges that both its alleged assignor and originator, MVP National Title Company ("**MVP Title**") and the originator's bank, BankUnited, were "senders" in the funds transfer. (Response at 4.) Thus, if any sender could recover its payment from a beneficiary's bank, then both MVP Title and BankUnited could sue Truist, subjecting it to multiple, and potentially inconsistent, liabilities. Accordingly, the reference to "each sender" recovering its payment establishes that a sender may recover its payment only from the party with which it did business.

Nor is there any merit to Approved Mortgage's argument that the reference to "beneficiary's bank" in subsection (a) means that the beneficiary's bank must bear the risk of loss in any funds transfer because it is the "wrongdoer." (Response at 9.) Subsection (a) refers to a "payment order received by the beneficiary's bank." Ind. Code § 26-1-4.1-207(a). Nothing in subsection (a) reflects that the beneficiary's bank commits wrongdoing by *receiving* a payment order. In this case, the wrongdoing occurred when an unknown person illegally accessed Approved Mortgage's system and altered the wire instructions for mortgage payoffs. (Amended Complaint ¶ 7.) Passive receipt of a payment order, made possible by a wrongdoer, does not amount to wrongdoing on the part of the recipient.

Subsection (a) refers to the beneficiary's bank not because that bank has a special obligation to all participants in a funds transfer, but because the receipt of a payment order by a

3

beneficiary's bank is the last step before a payment order is accepted. Thus, section 207 gives a beneficiary's bank the authority—but not the duty—to reject a payment order.

Approved Mortgage's argument fares no better under section 207(b). For the reasons explained in Truist's opening brief and in section III below, Approved Mortgage's claim under subsection (b) fails as a matter of law because Approved Mortgage cannot plausibly allege that Truist has actual knowledge of any discrepancy between the beneficiary's name and account number. But even if Truist knew of the discrepancy, subsection (c) makes clear that Approved Mortgage's only remedy is against the originator's bank, BankUnited.

Subsection (c)(2) describes the rights that an originator that is not a bank has when a beneficiary's bank accepts a payment order despite a discrepancy between a beneficiary's name and account number. That description is fatal to Approved Mortgage's claims against Truist because the only right provided to the originator is a right against the originator's bank, specifically:

> [T]he originator is not obliged to pay its order unless the originator's bank proves that the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary.

Ind. Code § 26-1-4.1-207(c)(2). Thus, the text and structure of section 207 inevitably lead to the conclusion that when a payment order goes awry, the originator has a remedy only against the originator's bank and not against the beneficiary's bank.

That conclusion is strengthened by the text of section 402(d), which specifies the remedies available in funds transfers. That section states that "[i]f the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay." Ind. Code

§ 26-1-4.1-402(d). As explained above, there can be multiple senders in a funds transfer, including the originator and the originator's bank. To avoid multiple and inconsistent liabilities, the beneficiary's bank can be required to refund payment only to its sender, the originator's bank, and the originator's bank can be required to refund payment only to its sender, the originator.

As explained in Truist's opening brief and in the following section, that conclusion is reinforced by every court decision to consider the issue. Thus, Approved Mortgage's remedy is against BankUnited, rather than Truist.

**II.     All cases to address recover in funds transfers impose a privity requirement.**

The United States Court of Appeals for the Second Circuit has interpreted the plain statutory language described above to mean that Article 4A "allows each sender of a payment order to seek refund **only** from the receiving bank it paid." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) (emphasis added). In other words, an originator can recover only from its bank, the originator's bank may recover only from the next bank to process the funds transfer, and so on. *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111, 120 (2d Cir. 2010). Stated more completely:

> under the Article 4A structure, the issuance and acceptance of payment orders creates rights and obligations only as between the sender of the payment order and its receiving bank (*e.g.*, between originator and originator's bank as to the originator's payment order), between the originator's bank and an intermediary bank as to the originator's bank's payment order, between the intermediary bank and the beneficiary bank as to the intermediary bank's payment order, and finally, as between the beneficiary bank that has accepted a payment order and that beneficiary.

*Id.*

There are "sound policy reasons for limiting the right to seek a refund to the sender who directly paid the receiving bank." *Grain Traders,* 160 F.3d at 102 . As the court in *Grain Traders* explained:

> To allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer.

*Id*.

Approved Mortgage tries to distinguish those cases by noting that they concern incomplete funds transfers and the role of intermediary banks. (Response at 14–16.) But the Second Circuit did not limit its holdings to those circumstances, and later cases have applied those holdings in cases virtually identical to the facts here. For example, in *Frankel-Ross v. Congregation OHR Hatalmud*, the plaintiff sought to recover from the beneficiary's bank money she was fraudulently induced to send to an incorrect beneficiary. No. 15 CIV. 6566 (NRB), 2016 WL 4939074, at *3 (S.D.N.Y. Sept. 12, 2016). The plaintiff argued, just as Approved Mortgage argues here, that the beneficiary's bank had to return the funds because it "knew that the name on the face of the payment order and the account number identified different persons." *Id.* The district court dismissed the lawsuit against the beneficiary's bank, holding that because the plaintiff was not in privity with the beneficiary's bank, "she cannot maintain a cause of action pursuant to Section 4-A-207 against [the beneficiary's bank]." *Id.*

Approved Mortgage tries to distinguish *Frankel-Ross* from this case because the plaintiff in *Frankel-Ross* sought relief only under section 207(b), rather than both sections 207(a) and (b). But that distinction is immaterial because, as explained above,

6

section 207(b) takes precedence over section 207(a), and the text of section 207(a) requires privity as well. Approved Mortgage also criticizes the district court in *Frankel-Ross* for failing to distinguish the holdings in the Second Circuit cases it relies on, but there is no language in the Second Circuit cases that supports such a distinction.

      Approved Mortgage's request that the Court reject all other case law addressing the issue presented is especially inappropriate in the context of a case involving the Uniform Commercial Code because one of the UCC's purposes is "to make uniform the law among the various jurisdictions." Ind. Code § 26-1-1-102(2)(c); *see also United Bank of Crete-Steger v. Gainer Bank, N.A.,* 874 F.2d 475, 478 (7th Cir. 1989) ("In order to promote the objective of uniformity stated in § 1–102 of the Uniform Commercial Code, it is appropriate, if not mandated, that a court refer to decisions of other jurisdictions interpreting the same provision.").

      Nor is there any merit to Approved Mortgage's claim that it could not have recovered its money from BankUnited because BankUnited did not commit any wrongdoing. (Response at 12–13.) As explained above, section 207(c) provides an originator with a right against its bank when the originator's bank honors a payment order despite a discrepancy between a beneficiary's name and account number. Ind. Code § 26-1-4.1-207(c)(2). And if Approved Mortgage had pursued a claim against BankUnited, BankUnited would have then had an incentive to pursue a claim against Truist. But Approved Mortgage asks the Court to let it avoid the carefully designed remedies set forth in Article 4A in favor of a decision that allows multiple parties to sue a beneficiary's bank. This Court should reject that proposal, just as all other courts which have considered this issue have.

**III.    Approved Mortgage's claim under Article 4A fails because Truist was entitled to rely upon the account number provided when accepting funds transfers.**

Approved Mortgage's claim under Article 4A fails for the additional reason that Truist credited the funds transferred to the person identified by account number. Article 4A authorizes a bank to rely solely upon the beneficiary's account number unless it has actual knowledge that the name and account number identify different persons. Ind. Code § 26-1-4.1-207(b)(1). Moreover, the beneficiary's bank has no obligation to "determine whether the name and number refer to the same person." *Id.* Moreover, a "very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account." *Id.*, Official Comment 2.

The "efficiency benefits of an automated system are undermined if a bank is not able to rely on its automated system but must independently verify there is no conflict between a beneficiary name and an account number." *First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1152 (10th Cir. 2000). Accordingly, a bank "has no duty to determine whether there is a conflict and it may rely on the number as the proper identification of the beneficiary of the order." *Id.*

Thus, Approved Mortgage's conclusory allegation that Truist had actual knowledge that the beneficiary identified by name differed from the beneficiary identified by account number fails to state a plausible claim because nothing in the Amended Complaint even suggests that Truist departed from the prevailing practice of relying on the account number alone. (Amended Complaint ¶ 33–34.) Accordingly, the Court should dismiss Approved Mortgage's claims under Article 4A.

### IV. Approved Mortgage's attempt to impose a duty on Truist inconsistent with the UCC is preempted by the UCC.

Approved Mortgage alleges in Count III of the Amended Complaint that Truist was negligent because it failed to detect and prevent fraudulent activity by AER Operations. The Court should reject Approved Mortgage's attempt to impose liability on Truist under a theory of negligence because the obligations Approved Mortgage seeks to impose conflict with Article 4A. Ind. Code § 26-1-4.1-101, Official Comment ("[R]esort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.").

Article 4A contemplates an automated funds transfer process that does not rely on the participants to confirm the accuracy of the information they receive. *Id.* § 26-1-4.1-207, Official Comment 2 ("If the beneficiary's bank has both the account number and name of the beneficiary supplied by the originator of the funds transfer, it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, **but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost**." (emphasis added)). Imposing a duty of care on a beneficiary's bank to investigate the beneficiary's trustworthiness in every transaction conflicts with that goal.

Nor is there any merit to Approved Mortgage's argument that the duty it seeks to impose on Truist fits with Article 4A because the duty involves Truist's conduct before and after—rather than during—the funds transfer. (Response at 24.) The gravamen of Approved Mortgage's claim is that Truist completed a funds transfer when it should not have. Article 4A provides a comprehensive set of rules for evaluating funds transfers, and those rules do not involve pre-transfer or post-transfer conduct. Because this "situation is unequivocally covered by particular provisions in Article 4A, then it is beyond debate that Article 4A governs exclusively." *BMO*

9

*Harris Bank N.A. v. Salin Bank & Tr. Co.*, 442 F. Supp. 3d 1075, 1081 (S.D. Ind. 2020). Accordingly, Article 4A preempts Approved Mortgage's negligence claim, and the Court should dismiss that claim. *Community Bank FSB*, 966 F. Supp. at 777.

V.    **Truist does not owe a duty of care to a non-customer with whom it had no dealings.**

Approved Mortgage's negligence claim fails for the additional reason that Truist did not owe Approved Mortgage a duty of care. While Approved Mortgage contends that the Court cannot decide the question of duty in a motion to dismiss, "[t]he existence of such a legal duty is a question of law for the court to decide." *Holtz v. Hilliard*, 1 F. Supp. 2d 887, 893 (S.D. Ind. 1998), *aff'd sub nom. Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732 (7th Cir. 1999). Even if the Court found it needed to analyze the factors described in *Webb v. Jarvis* to determine whether a duty exists, that analysis can be performed based on the allegations in the Amended Complaint.

In *Webb v. Jarvis*, the Indiana Supreme Court held that to determine whether a duty exists, a court should balance three factors: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." 575 N.E.2d 992, 995 (Ind. 1991). Here, the allegations in the Amended Complaint establish that no relationship exists between Truist and either Approved Mortgage or its alleged assigner, MVP Title. Nor could Truist have foreseen any harm to those parties, about whom it knew nothing. Finally, public policy favoring the rapid and efficient execution of payment orders opposes imposing a duty on banks that makes the system slower, less certain, and less efficient.

That conclusion is consistent with other decisions of the Indiana Supreme Court holding that a bank is generally not required to exercise ordinary care in opening a bank account, *Auto Owner Ins. Company v. Bank One,* 879 N.E.2d 1086, 1089-90 (2008), and that a bank does not

10

owe a duty of care to a subordinate creditor. *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 843 (Ind. 2012). Thus, even if the UCC did not preempt Approved Mortgage's claim for negligence, that claim still fails as a matter of law because Truist did not owe any duty to Approved Mortgage.

## CONCLUSION

The Court should dismiss Approved Mortgage's claims under both Article 4A and the Indiana law of negligence.

Respectfully submitted,

FROST BROWN TODD LLC

By: */s/Darren A. Craig*
Darren A. Craig, #25534-49
Cameron S. Trachtman, #36387-49
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961
Telephone: (317) 237-3800
Facsimile: (317) 237-3900
Email: dcraig@fbtlaw.com
ctrachtman@fbtlaw.com
Attorneys for Defendant
Truist Bank, f/k/a SunTrust Bank

BT06701.0754628   4896-1354-8326v2