UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| APPROVED MORTGAGE CORPORATION, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00633-JMS-TAB |
| | ) | |
| TRUIST BANK, *f/k/a Suntrust Bank*, | ) | |
| | ) | |
| *Defendant*. | ) | |

## ORDER

The computer system belonging to Plaintiff Approved Mortgage Corporation ("Approved Mortgage") was infiltrated by hackers, which set off a chain reaction of events resulting in the payment of over half a million dollars to a third party by Defendant Truist Bank, formerly known as SunTrust Bank ("Truist"). Approved Mortgage initiated this lawsuit, seeking to recover the money paid to the third party pursuant to Indiana's version of the Uniform Commercial Code ("UCC") and based on a theory of common law negligence. Truist has filed a Motion to Dismiss, [Filing No. 22], which is now ripe for the Court's review.

### I.
### STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007.)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the

1

complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). The Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz,* 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following factual allegations are set forth in Approved Mortgage's Amended Complaint, [Filing No. 19], which the Court must accept as true at this time.

Approved Mortgage is a mortgage originator that provides loans to residential, business, and commercial customers. [Filing No. 19 at 1.] In early summer of 2021, Approved Mortgage received two payoff requests from customers who were financing their homes through Approved Mortgage. [Filing No. 19 at 1.] Both requests were payable to Huntington Mortgage Company, and one request concerned borrower Jagtar Singh's mortgage loan, while the other concerned borrower Rupinder K. Gill Nagra's mortgage loan. [Filing No. 19 at 1-2.]

At some unknown time after the payoff requests were received, "the information for both loan payoffs was altered by perpetrators who illegally gained access to Approved Mortgage's system," causing altered and incorrect wiring instructions to be generated concerning the payoff requests ("the Altered Wiring Instructions"). [Filing No. 19 at 2.] The Altered Wiring Instructions were sent from Approved Mortgage's system to MVP National Title Company ("MVP Title"). [Filing No. 19 at 2.] MVP Title, in turn, sent payment orders to its bank,

BankUnited.  [Filing No. 19 at 2.]  BankUnited then executed wire transfers to Truist in the amount of $217,108.33 on July 30, 3031 ("Wire Transfer 1") and $333,536.65 on August 4, 2021 ("Wire Transfer 2").  [Filing No. 19 at 2; Filing No. 19-1; Filing No. 19-2.]

In the transfer instructions for both Wire Transfer 1 and Wire Transfer 2, the beneficiary name was "SunTrust Bank," the name by which Truist was formerly known;[1] the beneficiary account number was 1000282311157 ("the Account Number"); and the beneficiary address was 555 Cleveland Avenue, Columbus, OH 43231 ("the Beneficiary Address").  [Filing No. 19 at 2; Filing No. 19-1 at 1; Filing No. 19-2 at 1.]  The Account Number corresponds to an account at Truist belonging to AER Operations, LLC ("AER Operations"), a limited liability company that was formed in October 2020.  [Filing No. 19 at 2.]  AER Operations had opened its account with Truist shortly after its formation, using an address in Tillamook, Oregon.  [Filing No. 19 at 2.] The Beneficiary Address, however, "is a nonexistent address."  [Filing No. 19 at 2.]

Without contacting BankUnited or MVP Title to verify the wire transfer instructions, Truist accepted the wire transfers and applied the funds to the account belonging to AER Operations.  [Filing No. 19 at 3.]  Prior to receiving these wire transfers, "the AER Operations account did not have such significant transfers to its account."  [Filing No. 19 at 3.]  In addition, prior to these wire transfers, Truist "had stopped a wire transfer of $116,306.51 that was intended for the AER Operations account due to possible fraud or other irregularity" ("the Previous Transfer Attempt").  [Filing No. 19 at 3.]

---

[1] Truist was formerly known as SunTrust Bank.  [*See* Filing No. 19 at 1; Filing No. 23 at 1.] Accordingly, any references in this Order to Truist or SunTrust Bank should be understood to refer to the same entity.

On or around August 9, 2021,[2] Arthur Rubiera, the registered agent of AER Operations, traveled from Oregon to a Truist branch in Memphis, Arkansas, where Truist employees provided him with $546,658.00 in cashier's checks.  [Filing No. 19 at 3.]  The Truist employees provided these cashier's checks despite the fact that: (1) there were past concerns with fraud and irregularities relating to the AER Operations account; (2) the AER Operations account was relatively new and did not have a history of large amounts flowing through it; (3) "the funds had just been deposited into the account via wire transfers with obvious facial discrepancies"; and (4) Mr. Rubiera had never withdrawn such a significant sum from a Truist account.  [Filing No. 19 at 3-4.]  Mr. Rubiera mailed the cashier's checks to other parties, and ultimately "the funds landed in the hands of a perpetrator who converted the funds into cryptocurrency."  [Filing No. 19 at 3.]

The wired funds were intended to pay off mortgage loans held at Huntington Mortgage Company by Approved Mortgage's customers, Mr. Singh and Mr. Nagra.  [Filing No. 19 at 4.]  Because the funds were withdrawn and dispersed by Mr. Rubiera, Approved Mortgage was forced to replace the funds and pay off the mortgages itself.  [Filing No. 19 at 4.]  Following the execution of the wire transfers, MVP Title assigned to Approved Mortgage all rights to any claims, demands, or causes of action it has or may have against Truist.  [Filing No. 19 at 4.]

In its Amended Complaint, Approved Mortgage asserts three claims against Truist. [Filing No. 19 at 4-7.]  In Count I, Approved Mortgage asserts that Truist violated Indiana Code § 26-1-4.1-207(a) by accepting the wire transfers "despite them referring to a nonexistent or unidentifiable account" and despite the fact that the beneficiary information listed on the wire transfer instructions "bore no similarity to AER Operation's (sic) account information." [Filing

---

[2] The Amended Complaint states August 9, 2020, but given the other allegations, the Court believes 2020 to be a scrivener's error and that this event occurred in 2021.

4

No. 19 at 4.]  In Count II, Approved Mortgage asserts that Truist violated Indiana Code § 26-1-4.1-207(b)(2) because it accepted the wire transfers even though it had actual knowledge that the beneficiary name listed on the wire transfer (SunTrust Bank/Truist) and the Account Number (corresponding to AER Operations' account) identified different persons.  [Filing No. 19 at 5.] Finally, in Count III, Approved Mortgage asserts a common law negligence claim against Truist, stating that Truist had a duty to act with ordinary care, use sound banking practices, and act in a commercially reasonable manner, and that Truist breached that duty by: (1) "failing to detect and flag AER Operations['] account as suspicious" and accepting the wire transfers despite "obvious indicia of fraud"; (2) giving Mr. Rubiera $546,658.00 in cashier's checks without questioning him; and (3) failing to implement and adhere to security procedures to properly detect and flag suspicious accounts or activity.  [Filing No. 19 at 5-7.]  Truist seeks dismissal of all three claims.

### III.
### DISCUSSION

#### A.  Counts I and II: Claims under the UCC

##### 1.  Statutory Framework

In order to understand the issues presented in this case with respect to Counts I and II, it is necessary to first understand the statutory framework under which these claims arise.  Rights and liabilities concerning funds transfers—also known as wire transfers—are governed by Article 4A of the UCC.  See *First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1152 (10th Cir. 2000).  Article 4A is codified in Indiana at Indiana Code § 26-1-4.1-101 *et seq*.  Although Indiana did not adopt the Official Comments to the UCC as a part of its version of the UCC, Indiana courts often look to the Official Comments to the UCC for guidance in interpreting and applying Indiana's version of the UCC.  *BMO Harris Bank N.A. v. Salin Bank & Tr. Co.*, 442 F. Supp. 3d 1075, 1079 (S.D. Ind. 2020) (citing, *inter alia*, *EngineAir, Inc. v. Centra*

*Credit Union*, 107 N.E.3d 1061, 1067 (Ind. Ct. App. 2018)).   Furthermore, the Seventh Circuit has recognized that because the UCC is intended to promote uniformity among jurisdictions, courts interpreting or applying a provision of one state's version of the UCC can and should look to caselaw from other jurisdictions addressing the same provision for guidance. *See United Bank of Crete-Steger v. Gainer Bank, N.A.*, 874 F.2d 475, 478 n.5 (7th Cir. 1989) ("In order to promote the objective of uniformity stated in § 1-102 of the [UCC], it is appropriate, if not mandated, that a court refer to decisions of other jurisdictions interpreting the same provision.").

A "funds transfer" is a "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Ind. Code § 26-1-4.1-104(a).   The transactions in the series each involve a "sender," which is "the person giving the instruction," and a "receiving bank," which is "the bank to which the sender's instruction is addressed." Ind. Code § 26-1-4.1-103(a)(4), (5).   A funds transfer begins with the "originator," which is "the sender of the first payment order in a funds transfer." Ind. Code § 26-1-4.1-104(c). In cases in which the originator is not a bank, the originator will send its payment order to a receiving bank, and that bank will be called the "originator's bank." Ind. Code § 26-1-4.1-104(d).   The originator's bank may then become a sender, and send the payment order to another receiving bank.   One or more intermediary banks may receive and send the payment order, with the last bank in the chain being the "beneficiary's bank," which means "the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order or which otherwise is to make payment to the beneficiary if the order does not provide for payment to an account." Ind. Code § 26-1-4.1-103(a)(3).   The beneficiary's bank pays the beneficiary, thereby completing the funds transfer. Ind. Code § 26-1-4.1-103(a)(2).

In this case, the originator is MVP Title, which is not a bank, and which sent its payment order to BankUnited, the originator's bank.  Because MVP Title assigned all of its rights to Approved Mortgage, Approved Mortgage steps into the shoes of MVP Title and may be treated as the originator for purposes of this analysis.  BankUnited then sent payment instructions to Truist, the beneficiary's bank.  Truist then paid the beneficiary, AER Operations.  Approved Mortgage contends that Truist violated the law in accepting the payment order and paying AER Operations, because the payment order contained conflicting information about the identity of the beneficiary.  Specifically, Approved Mortgage asserts that the beneficiary name (SunTrust Bank/Truist), the beneficiary Account Number (which corresponded to AER Operations' account), and the Beneficiary Address (a fictitious address in Ohio not associated in any way with AER Operations) were inconsistent.

Section 26-1-4.1-207 of the Indiana Code ("Section 207")—which corresponds to Article 4A, Section 207 of the UCC—addresses situations involving the misdescription of a beneficiary on a payment order.  In relevant part, Section 207 provides as follows:

    (a) Subject to subsection (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.

    (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:

        (1) Except as otherwise provided in subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order.  The beneficiary's bank need not determine whether the name and number refer to the same person.

        (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as

> beneficiary except the person paid by the beneficiary's bank if that person
> was entitled to receive payment from the originator of the funds transfer.
> If no person has rights as beneficiary, acceptance of the order cannot
> occur.

Ind. Code § 26-1-4.1-207(a)-(b).  Approved Mortgage asserts claims under both subsection (a) and subsection (b)(2).  [*See* Filing No. 19 at 4-5.]

As explained in the UCC Official Comments, "[s]ubsection (a) deals with the problem of payment orders issued to the beneficiary's bank for payment to nonexistent or unidentifiable persons or accounts."  Official Comment to UCC § 4A-207, cmt. 1.  The Official Comment further provides:

> Since it is not possible in that case for the funds transfer to be completed,
> subsection (a) states that the order cannot be accepted. Under Section 4A-402(c)
> [of the UCC], a sender of a payment order is not obliged to pay its order unless
> the beneficiary's bank accepts a payment order instructing payment to the
> beneficiary of that sender's order. Thus, if the beneficiary of a funds transfer is
> nonexistent or unidentifiable, each sender in the funds transfer that has paid its
> payment order is entitled to get its money back.

Official Comment to UCC § 4A-207, cmt. 1.

However, subsection (b) "takes precedence over subsection (a)," and "deals with the problem of payment orders in which the description of the beneficiary does not allow identification of the beneficiary because the beneficiary is described by name and by an identifying number or an account number and the name and number refer to different persons." Official Comment to UCC § 4A-207, cmt. 2.  With respect to situations in which the beneficiary's bank has actual knowledge of the discrepancy—which Approved Mortgage alleges is the case here—the beneficiary's bank is deemed to have not accepted the payment order and therefore, pursuant to UCC § 4A-402(b), the originator's bank is not obliged to pay the beneficiary's bank, and, pursuant to UCC § 4A-402(c), the originator is not obliged to pay the

originator's bank.  *See* Official Comment to UCC § 4A-207, cmt. 2.  The beneficiary's bank therefore "takes the loss."  *See* Official Comment to UCC § 4a-207, cmt. 2.

Indiana Code § 26-1-4.1-402 ("Section 402"), which corresponds to UCC § 4A-402 (mentioned in the Official Comments to UCC § 4A-207), governs the obligation of senders to pay receiving banks.  Section 402 is "subject to" Section 207, Ind. Code § 26-1-4.1-402(a), but provides that acceptance of a payment order by the beneficiary's bank obliges the sender of the order to pay the beneficiary's bank the amount of the payment order.  Ind. Code § 26-1-4.1-402(b).  In addition, acceptance of a payment order issued to a bank other than the beneficiary's bank obliges the sender to pay the receiving bank the amount of the sender's order, but this obligation is excused "if the funds transfer is not completed by acceptance by the beneficiary's bank."  Ind. Code § 26-1-4.1-402(c).  However, "[i]f the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid, the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay."  Ind. Code § 26-1-4.1-402(d).

    2.  *The Parties' Arguments*

Truist argues that both of Approved Mortgage's claims under Section 207 fail as a matter of law for two reasons: (1) neither Approved Mortgage nor MVP Title was in privity with Truist, and therefore Approved Mortgage cannot sue Truist; and (2) regardless, Truist was entitled to rely on the Account Number when accepting the funds transfers.  [Filing No. 23 at 3-8.] Regarding the privity issue, Truist argues that Section 207 does not specify the remedies available when a beneficiary's bank erroneously accepts a payment order, and the Court therefore must look to Section 402 for the remedy.  [Filing No. 23 at 4-5.]  Regardless, Truist argues, Article 4A of the UCC only allows each sender of a payment order to seek a refund from the

receiving bank it paid, and therefore only BankUnited could pursue relief against Truist in this case. [Filing No. 23 at 5-7.] In support of this argument, Truist cites several cases from other courts, including *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998). [Filing No. 23 at 5-7.] Alternatively, Truist argues that the Section 207 claims fail because Approved Mortgage has not alleged sufficient facts demonstrating that Truist had actual knowledge that the beneficiary name and the Account Number on the wire transfer instructions identified different persons, and absent actual knowledge, a bank is permitted to rely solely on the account number without having to determine whether the name and account number refer to the same person. [Filing No. 23 at 7-8.]

In response, Approved Mortgage argues that it has stated a claim under Section 207(a) because the payment instructions for Wire Transfer 1 and Wire Transfer 2 both contained "other information of the beneficiary" that referred to "a nonexistent or unidentifiable person or account"—specifically, the fictitious Beneficiary Address, as well as borrower names and account numbers for Mr. Singh and Rupinder Gill Gurinder, who did not have loans with Truist. [Filing No. 26 at 6-2.] Accordingly, Approved Mortgage asserts, pursuant to the Official Comment to Section 207(a) of the UCC, Approved Mortgage, standing in the shoes of MVP Title, is a sender "entitled to get its money back." [Filing No. 26 at 7.] Approved Mortgage further argues that there is no privity requirement in Section 207(a), which "expressly places liability on the 'beneficiary's bank' if it accepts a payment order that should not have been accepted, allowing a sender to get its money back from the beneficiary's bank." [Filing No. 26 at 9.] Approved Mortgage contends that the cases cited by Truist only incorporate a privity requirement into UCC Section 402(d), but Section 402(d) does not apply in this case, and even if it does, no privity requirement appears in the plain language of that provision. [Filing No. 26 at

8-17.]  For the same reasons, Approved Mortgage also asserts that there is no privity requirement in Section 207(b)(2).  [Filing No. 26 at 20-21.]  In addition, Approved Mortgage argues that it has adequately pled that Truist had actual knowledge of the discrepancies in the wire transfer instructions and therefore its claim under Section 207(b)(2) must survive.  [Filing No. 26 at 18-20.]

In reply, Truist reiterates its arguments that the text and structure of Section 207 and Section 402 require privity between parties as a prerequisite for recovery.  [Filing No. 27 at 2-7.]  Truist also maintains that Approved Mortgage has not plausibly alleged that Truist had actual knowledge of any discrepancy between the beneficiary name and the Account Number on the wire transfer instructions, and therefore Approved Mortgage cannot state a claim under Section 207(b), because Section 207(c)(2) provides that when a beneficiary's bank has no actual knowledge of a discrepancy, the originator only has a remedy against the originator's bank.  [Filing No. 27 at 4.]

       *3.  Analysis*

Accepting the allegations of the Complaint as true, the payment instructions for Wire Transfer 1 and Wire Transfer 2 both listed the beneficiary name as "SunTrust Bank," the name by which Truist was formerly known; listed the Account Number associated with AER Operations' Truist account; and listed the fictitious Beneficiary Address, which has no association with AER Operations or any other party with an account at Truist.  [Filing No. 19 at 2; Filing No. 19-1 at 1; Filing No. 19-2 at 1.]  Approved Mortgage asserts that these circumstances trigger both Section 207(a)—because the beneficiary information "refers to a nonexistent or unidentifiable person or account"—and Section 207(b)—because "the

[beneficiary] name and [account] number identify different persons."[3]  When Section 207(a) is triggered, "no person has rights as a beneficiary of the order and acceptance of the order cannot occur."  Ind. Code § 26-1-4.1-207(a).  When Section 207(b) is triggered, the result depends on whether the beneficiary's bank—in this case, Truist—has knowledge of the discrepancy. Approved Mortgage has adequately alleged that Truist had such knowledge, and therefore Section 207(b)(2) applies.  Under that provision, because Truist paid AER Operations, but AER Operations was not entitled to receive payment from Approved Mortgage (and its payment was instead the result of a hacker generating the Altered Wiring Instructions), the consequence is that "no person has rights as a beneficiary, [and] acceptance of the order cannot occur."  Ind. Code § 26-1-4.1-207(c)(2).

In Approved Mortgage's view, the inquiry stops there.  Synthesizing the fact that the payment order is deemed not to have been accepted with the statements in the Official Comments to UCC Section 4A-207 that "each sender in the funds transfer that has paid its payment order is entitled to get its money back" and the beneficiary's bank "takes the loss," Approved Mortgage contends that it can recover from Truist, without reference to Section 402. But noting in Section 207 dictates what happens or what remedy may be had if "acceptance of the order cannot occur."  For that answer, the Court must look to Section 402, which is expressly referenced in the Official Comments to UCC § 4A-207, and which governs the obligations of senders to pay receiving banks.

---

[3] Given that Section 207(a) expressly states that it is "[s]ubject to subsection (b)," and that the Official Comment to UCC Section 4A-207 states that subsection (b) "takes precedence over subsection (a)," it is unclear whether a party can assert claims under both provisions. Furthermore, the Official Comment to UCC Section 4A-207 discusses situations in which "it is not possible . . . for the funds transfer to be completed" because the beneficiary is "nonexistent or unidentifiable."  That does not describe the facts alleged in this case, which indicate that a beneficiary was not only identified but was actually paid.  Regardless, the Court assumes without deciding that Approved Mortgage may pursue relief under both subsections.

Section 402(d) provides that "[i]f the sender of a payment order pays the order and was not obliged to pay all or part of the amount paid"—which, by operation of Section 207, is the case alleged here—then "the bank receiving payment is obliged to refund payment to the extent the sender was not obliged to pay." Ind. Code § 26-1-4.1-402(d).  As Truist points out, several courts have concluded that Section 402(d) contains a privity requirement, meaning that it "allows each sender of a payment order to seek refund only from the receiving bank it paid." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998).  As the Second Circuit explained in *Grain Traders*, in addition to the privity requirement being consistent with the language and structure of Article 4A, "there are sound policy reasons for limiting the right to seek a refund to the sender who directly paid the receiving bank." *Id*. at 102.  Specifically:

> One of Article 4–A's primary goals is to promote certainty and finality so that "the various parties to funds transfers [will] be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately." To allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer. These are matters as to which an intermediary bank ordinarily should not have to be concerned and, if it were otherwise, would impede the use of rapid electronic funds transfers in commerce by causing delays and driving up costs.

*Id*. (internal citations omitted).

The plain language of Section 402(d) also supports this interpretation.  It states that the receiving bank is obliged to refund "the sender."  The sender is "the person giving the instruction to the receiving bank." Ind. Code § 26-1-4.1-103(a)(5).  In this situation, if Truist is the receiving bank, then BankUnited is the sender, because BankUnited was the entity giving payment instructions to Truist.  And although Approved Mortgage, standing in the shoes of MVP Title by virtue of the assignment, is *a* sender (to the extent that it sent payment instructions to

BankUnited), it is not *the* sender (because it did not send payment instructions to Truist).  *See Grain Traders*, 160 F.3d at 101 (Section 4A-402 incorporates "a 'privity' requirement into the 'money back guarantee' provision so that it applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole").  Approved Mortgage, therefore, cannot recover from Truist because neither it nor MVP Title was a party to the payment order received by Truist.

The hypothetical scenario outlined in the Official Comments to UCC § 4A-207 further helps to illustrate the appropriate result in this case.  The hypothetical provides:

> Doe is the holder of shares in Mutual Fund. Thief, impersonating Doe, requests redemption of the shares and directs Mutual Fund to wire the redemption proceeds to Doe's account #12345 in Beneficiary's Bank. Mutual Fund originates a funds transfer by issuing a payment order to Originator's Bank to make the payment to Doe's account #12345 in Beneficiary's Bank. Originator's Bank executes the order by issuing a conforming payment order to Beneficiary's Bank which makes payment to account #12345. That account is the account of Roe rather than Doe. Roe might be a person acting in concert with Thief or Roe might be an innocent third party. Assume that Roe is a gem merchant that agreed to sell gems to Thief who agreed to wire the purchase price to Roe's account in Beneficiary's Bank. Roe believed that the credit to Roe's account was a transfer of funds from Thief and released the gems to Thief in good faith in reliance on the payment. . . .
>
> [I]f Beneficiary's Bank knew about the conflict between the name and number and nevertheless paid Roe, subsection (b)(2) applies. Under that provision, acceptance of the payment order of Originator's Bank did not occur because there is no beneficiary of that order. Since acceptance did not occur Originator's Bank is not obliged to pay Beneficiary's Bank. Section 4A-402(b). Similarly, Mutual Fund is excused from its obligation to pay Originator's Bank. Section 4A-402(c). Thus, Beneficiary's Bank takes the loss. Its only cause of action is against Thief. Roe is not obliged to return the payment to the beneficiary's bank because Roe received the payment in good faith and for value.

Official Comment to UCC § 4A-207, cmt. 2.

Here, Approved Mortgage relies on the statement in this hypothetical that "Beneficiary's Bank"—which on these facts, is Truist—"takes the loss."  But nothing in the hypothetical

suggests that Beneficiary's Bank must refund Mutual Fund (the originator) directly.  Instead, Mutual Fund (the originator) is excused from its obligation to pay Originator's Bank, meaning in this case Approved Mortgage (standing in the shoes of MVP Title) would be excused from its obligation to pay BankUnited (originator's bank).  BankUnited, in turn, is not obligated to pay Truist.  Truist, therefore, would "take[] the loss" and be required to recover the amount that it refunded to BankUnited from the party responsible for the fraudulent transfer, perhaps the hackers or Mr. Rubiera.[4]

Approved Mortgage asserts that "incorporating a privity requirement does not make sense," essentially because it believes that Truist—not BankUnited—is the "wrongdoer" in this case and because there is no incentive for BankUnited to sue Truist to recover the funds because BankUnited has not taken an actual loss.  [*See* Filing No. 26 at 12-13.]  But Approved Mortgage's policy concerns notwithstanding, the text and structure of Section 207 and Section 402, for the reasons explained in *Grain Traders*, preclude Approved Mortgage from recovering from Truist in these circumstances.  And it does "make sense," given that Section 207 and Section 402 provide for an orderly unravelling of the wire transfers, which directs each party in the chain of transactions to recover from only the next party in line.  This scheme of recovery in turn provides certainty as to each party's rights and liabilities and prevents multiple and potentially inconsistent liabilities.  Approved Mortgage cannot make an end run around these rules by suing Truist directly.

---

[4] The facts as alleged in this case do not directly correspond to the facts of the hypothetical, and it is unclear whether Mr. Rubiera accepted the funds in good faith and for value (like Roe).  The Court does not intend anything in this Order to constitute a definitive finding regarding the party or parties from whom Truist may potentially recover, as that is not at issue in this lawsuit.  The point is merely to illustrate that the proper sequence of recovery on the facts alleged in this case does not involve Approved Mortgage (or MVP Title) recovering from Truist directly, and in the event that Truist may be required to refund money to BankUnited, Truist may have its own cause of action against another party.

In sum, neither Section 207(a) nor Section 207(b) provides Approved Mortgage with a cause of action against Truist under the circumstances presented in this case.  Truist's Motion to Dismiss, [Filing No. 22], is **GRANTED** to the extent that Counts I and II are **DISMISSED**.

### B.  Count III: Negligence

Truist argues that Approved Mortgage's common law negligence claim asserted in Count III fails as a matter of law because it is preempted by the UCC, which covers all claims related to wire transfers.  [Filing No. 23 at 8-9.]  In the alternative, Truist argues that Approved Mortgage cannot maintain a negligence claim under Indiana law because Truist did not owe Approved Mortgage a duty of care since Approved Mortgage was never Truist's customer.  [Filing No. 23 at 10-11.]

In response, Approved Mortgage asserts that the UCC only preempts state law to the extent that a claim is expressly covered by the UCC, but because it alleges that Truist's negligent conduct was outside the scope of the UCC, its negligence claim is not preempted.  [Filing No. 26 at 22-25.]  Specifically, Approved Mortgage has alleged that Truist was negligent in: (1) failing to detect and flag the AER Operations account and subject it to further scrutiny given the Previous Transfer Attempt and other suspicious activity; (2) handing Mr. Rubiera over half a million dollars in cashier's checks, despite the suspicious circumstances surrounding the transaction; and (3) failing to implement adequate security procedures to flag suspicious account or activity.  [Filing No. 26 at 22.]  Approved Mortgage further argues that "the motion to dismiss stage is not one where this Court should determine the weighty question of whether a duty exists under Indiana law" because that question is currently unsettled and has been expressly left open by the Indiana Supreme Court.  [Filing No. 26 at 26.]  Instead, Approved Mortgage argues, that

determination would involve balancing "the relationship between the parties, foreseeability, and public policy," and should be reserved for a later stage in the litigation. [Filing No. 26 at 26-27.]

In reply, Truist reiterates that Approved Mortgage's negligence claim is preempted by the UCC and asserts that Approved Mortgage is attempting to impose a duty inconsistent with the UCC. [Filing No. 27 at 9.] Specifically, Truist contends that Article 4A of the UCC "contemplates an automated funds transfer process that does not rely on the participants to confirm the accuracy of the information they receive." [Filing No. 27 at 9.] Truist further argues that the Court is permitted to decide legal questions—such as the existence of a duty—at the motion to dismiss stage and that balancing the relationship between the parties, the reasonable foreseeability of harm, and public policy concerns yields the conclusion that Truist did not owe a duty of care to Approved Mortgage. [Filing No. 27 at 10.] Truist contends that such a conclusion would be consistent with Indiana caselaw declining to impose a duty of care on banks in other contexts. [Filing No. 27 at 10-11.]

The Court has previously "recognize[d] the relatively limited body of case law available" concerning whether and to what extent Article 4A of the UCC preempts common law claims. *BMO Harris Bank N.A. v. Salin Bank & Tr. Co.*, 442 F. Supp. 3d 1075, 1080 (S.D. Ind. 2020). However, looking to other district courts for guidance, the Court articulated the preemption standard as follows:

> Parties whose conflict arises out of a funds transfer should look first and foremost to Article 4A for guidance in bringing and resolving their claims. If a situation is unequivocally covered by particular provisions in Article 4A, then it is beyond debate that Article 4A governs exclusively. However, courts should not interpret this directive to mean that Article 4A has completely eclipsed the applicability of common law in the area of funds transfers. Rather, preemption likely does not foreclose common law claims related to funds transfers when the disputed conduct or factual scenario is not addressed squarely by the provisions of Article 4A.

*Id*. at 1081 (internal quotations, citations, and alterations omitted).

This preemption standard is based in part on the Official Comments to Article 4A, which explain that:

> In the drafting of Article 4A, a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles. In the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately. This consideration is particularly important given the very large amounts of money that are involved in funds transfers.
>
> Funds transfers involve competing interests--those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

Official Comment to UCC § 4A-101.

Here, although Approved Mortgage points to several alleged actions by Truist in support of its negligence claim, the harm of which Approved Mortgage complains is in reality a direct result of Truist's acceptance of the wire transfers and the resulting payment of funds to AER Operations.  As discussed above, acceptance of wire transfers and liability for losses associated with wire transfers is expressly addressed in the UCC, particularly in Section 207 and Section 402.  In fact, Approved Mortgage essentially asserts a negligence claim as an alternative way to recover the same funds at issue with respect to its UCC claims.  [*See* Filing No. 19 at 7 (Approved Mortgage alleging that "[a]s a result of [Truist's] negligence, Approved Mortgage has

suffered damages in the amount of $550,644.98, which is the total sum of the misapplied wire transfers and the amount Approved Mortgage replaced to pay off its clients' mortgages").]
Approved Mortgage's negligence claim is therefore preempted by the UCC.  *See Attisha Enterprises, Inc. v. Cap. One, N.A.*, 505 F. Supp. 3d 1051, 1058 (S.D. Cal. 2020) ("Given that the wire transfer alleged here was a funds transfer within the meaning of the California Commercial Code, which sets forth duties, allocation of risk, and remedies that displace common law causes of action in the circumstances applicable here, [plaintiff's] common law claim alleging Capital One negligently allowed the wire transfer is dismissed. . . . The same analysis applicable to Capital One's allegedly negligent acceptance of the wire transfer applies to its allegedly negligent release of those funds.  Because this negligent act directly involves a funds transfer, the claim must arise under division 11 of the California Commercial Code, not common law negligence."); *Berry v. Regions Fin. Corp.,* 507 F. Supp. 3d 972, 978 (W.D. Tenn. 2020), *appeal dismissed*, 2021 WL 1511687 (6th Cir. Jan. 29, 2021) ("Plaintiffs' principal allegations involve a failure to maintain or abide by commercially reasonable security measures to prevent the fraudulent transfer of funds. The extent of Defendants' duty to maintain and abide by commercially reasonable security procedures in relation to funds transfers is set forth in Article 4A."); *ADS Assocs. Grp., Inc. v. Oritani Sav. Bank*, 99 A.3d 345, 359 (N.J. 2014) ("The dispute in this case arises from a setting directly addressed by Article 4A—a bank's acceptance of an order transferring funds from one account held by its customer to another of that customer's accounts. . . . [O]ur recognition of the common law negligence action asserted by [plaintiff] in his individual capacity would contravene the essential objective of Article 4A: to provide definitive principles that allocate the risks and define the duties of banks effecting electronic

19

transfers on behalf of their customers.").  Accordingly, Truist's Motion to Dismiss, [Filing No. 22], is **GRANTED** with respect to Count III, and that claim is **DISMISSED**.[5]

## IV.
### CONCLUSION

Based on the foregoing, Truist's Motion to Dismiss, [22], is **GRANTED** and this case is **DISMISSED with prejudice**.  Final judgment shall enter accordingly.

Date: 11/2/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[5] In light of the conclusion that Approved Mortgage's negligence claim is preempted by the UCC, the Court need not address Truist's alternative argument that it did not owe a duty of care under Indiana law.